HOWARD, Judge,
specially concurring.
¶ 24 The majority correctly concludes that Elizabeth was entitled to interest from the date Pinnacle received her notice for death benefits. I write separately because I disagree with part of the majority’s analysis. The majority states this case is similar to DKI in that a claim for death benefits “does not create an obligation to pay benefits” unless the carrier acknowledges the obligation or the claimant establishes to the Commission that the death was related to the decedent’s employment. DKI, 173 Ariz. at 537, 845 P.2d at 463; supra ¶ 14. It then states it was the ALJ, and not § 23-1046(A), that determined Elizabeth was entitled to death benefits. Supra ¶¶ 14-15. The majority goes on to determine “the death benefits Elizabeth was awarded [by the ALJ] were *111 liquidated and constituted a legal indebtedness or other obligation to pay.” Id. But it then determines interest begins to run from the date Pinnacle received Elizabeth’s notice of the claim, and not the date of the ALJ’s award. Supra ¶ 18. The majority thus seems to conclude that although Pinnacle had no obligation to pay Elizabeth until the ALJ issued its award, the fact that the amount of the award was liquidated controls the date from which interest began to accrue.
¶ 25 DKI sets for the test for when interest accrues under § 44-1201: “interest only begins to accrue when (1) there is a legal ‘indebtedness ... or other obligation’ to pay benefits and (2) when the carrier has ‘notice of [this] obligation to pay.’ ” 173 Ariz. at 537, 845 P.2d at 463, quoting Tisdel, 156 Ariz. at 213, 751 P.2d at 529 (alterations in DKI). The court in DKI further noted that a legal indebtedness or other obligation, which allows for the recovery of interest, arises only if the claim is “liquidated,” i.e., “set forth in an award, notice of claim status, or ... otherwise.” Id. at 538-39, 845 P.2d at 464-65. Put another way, if the claim “‘makes it possible to compute the amount with exactness, without reliance upon opinion or discretion,’ ” then a legal obligation exists which triggers the accrual of interest. Id. at 538, 845 P.2d at 464, quoting La Paz County, 153 Ariz. at 168, 735 P.2d at 778.
¶ 26 Elizabeth’s entitlement to interest, consequently, depends on, first, whether § 23-1046(A) creates a liquidated legal indebtedness or other obligation and, second, when a carrier has notice of that obligation. See id. at 537, 845 P.2d at 463. As for the first requirement, the amount of death benefits Elizabeth was owed is set by statute based on Charles’s average monthly wage which is “susceptible to mathematical computation and applied to the statutory payment schedule.” See DKI, 173 Ariz. at 538, 845 P.2d at 464; § 23-1046(A)(2). This schedule is similar to the permanent partial disability benefits paid pursuant to AR.S. § 23-1047(A). § 23-1046(A)(2); see also AR.S. § 23-1044(B). Thus, Elizabeth’s claim was liquidated at the time it was filed and therefore constituted a legal indebtedness or other obligation to pay. See DKI, 173 Ariz. at 539, 845 P.2d at 465.
¶ 27 The majority determines that enforcement through an award was necessary to trigger Pinnacle’s legal obligation. Supra ¶ 14. But in a similar context, we have stated that a statute can create a legal obligation which exists notwithstanding any action to enforce it. In Desert Mountain Properties Ltd. Partnership v. Liberty Mutual Fire Insurance Co., this court was asked to interpret the phrase “legal obligation to pay,” which was found in an insurance contract but was not defined in that contract. 225 Ariz. 194, ¶¶ 13, 17, 236 P.3d 421, 427-28 (App. 2010). The court determined that:
The language in the [insurance] policies may be interpreted according to its plain and ordinary meaning, as one untrained in law or business would understand it. Reading the policies in that manner, a “legal obligation to pay” means any obligation enforceable by law, including, for example, an obligation created by statute, contract or the common law. Once created, the obligation exists prior to and even in the absence of a suit to enforce it or a court order compelling performance.
In short, although a court may enforce a legal obligation, in the usual case, no court action is required to create a legal obligation. For that reason, we conclude the better-reasoned rule is that coverage for sums an insured becomes “legally obligated to pay as damages” may be triggered even in the absence of a civil lawsuit against the insured or a court order requiring the insured to make payment.
Id. ¶¶ 17-18. This analysis of “legal obligation” applies to our ease with equal force.
¶ 28 Section 23-1046(A), by setting forth a mathematical formula for determining the exact amount of benefits due, created Pinnacle’s obligation to pay Elizabeth “prior to and even in absence of’ Pinnacle’s decision to contest the cause of Charles’s death. Id. ¶ 17. The fact that an ALJ’s award was required to enforce Pinnacle’s obligation does not change the fact that § 23-1046(A) created the obligation once it received Elizabeth’s claim. See Desert Mountain Props., 225 Ariz. 194, ¶ 18, 236 P.3d at 428; see also La Paz *112 County, 153 Ariz. at 168, 735 P.2d at 778. The ALJ’s “determination did not change the nature of the [death] from nonindustrial to industrial. Instead, the [ALJ] corrected an error made by [Pinnacle] ... in characterizing” the cause of Charles’s death. Boehm & Associates v. Workers’ Comp. Appeals Bd., 76 Cal.App.4th 513, 90 Cal.Rptr.2d 486, 488 (1999).
¶ 29 As for whether the carrier had notice, § 23-1046(A) does not contain the same provision as § 23-1047(A), on which Tisdel was based, allowing the carrier to begin payments without waiting for a determination by the Commission. It does, however, provide that, after an injury causing death, compensation known as a death benefit “shall be payable in the amount, for the period, and to and for the benefit of ... the surviving spouse.” § 23-1046(A). Additionally, a carrier may always begin paying a claimant’s compensation without a determination from the Commission under § 23-1061(G). Thus, under § 23-1046(A), Elizabeth became entitled to the death benefits from the time of Charles’s death once she timely filed her notice of claim with the Commission. A.R.S. § 23-1061(A); § 23-1046(A). Unlike a petition to reopen under § 23-1061(H), § 23-1046(A) does not require any further action from the Commission for the payment of the death benefits to begin; it simply states the benefits “shall be payable.” And death benefits under § 23-1046(A) are not one of the enumerated benefits requiring additional action by the Commission under § 23-1047(A).[4] A carrier is therefore put on notice that benefits are due once it receives a claim filed pursuant to § 23-1046(A). See Tisdel, 156 Ariz. at 213, 751 P.2d at 529; DKI, 173 Ariz. at 537, 845 P.2d at 463.
¶ 30 Under OKI’s two-step test for determining whether interest is due, death benefits pursuant to § 23-1046(A) satisfy both requirements. See DKI, 173 Ariz. at 537, 845 P.2d at 463. First, § 23-1046(A)(2) provides an exact formula for computation of the amount of the death benefits Elizabeth was entitled to receive, so the claim was liquidated at the time of Charles’s death and therefore created a legal obligation. See DKI, 173 Ariz. at 539, 845 P.2d at 465; see also La Paz County, 153 Ariz. at 168, 735 P.2d at 778; Desert Mountain Props., 225 Ariz. at 201, ¶¶ 17-18, 236 P.3d at 428. And, second, because § 23-1046(A) does not require any action by the Commission for the death benefits to become due and payable, Pinnacle had notice of this obligation. Accordingly, Elizabeth was owed a liquidated legal indebtedness or other obligation upon Charles’s death and Pinnacle had notice of its obligation upon receipt of Elizabeth’s claim. The benefits therefore were not timely paid and interest on Elizabeth’s death benefits began to accrue once Pinnacle received her claim. Tisdel, 156 Ariz. at 212-13, 751 P.2d at 528-29; DKI, 173 Ariz. at 537, 845 P.2d at 463.

. Although death benefits pursuant to § 23-1046(A) do not require further action by the Commission, the same is not true for death benefits pursuant to § 23-1046(B). Section 23-1046(B) applies when the decedent "leaves dependents only partially dependent upon his earnings for support.” For death benefits falling under that subsection, the "insurance carrier within thirty days shall notify the commission and request that the claim be examined and further compensation, if any, be determined." § 23-1047(A). This provision was not applicable to Elizabeth’s claim because she is Charles’s surviving spouse, and neither party has argued that it would apply to this situation. See § 23-1046(A).